1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3
   GARRICK LAU, WILSON LAU and  ) CIVIL NO. 18-00295-DKW-RT
4  MABEL LAU,                   )
                                ) Honolulu, Hawaii
5            Plaintiffs,        )
                                ) May 6, 2019
6       vs.                     )
                                )
7  HONOLULU PARK PLACE, AOAO;   ) DEFENDANTS' MOTION TO
   CRAIG WILLIAMS; REBECCA      ) DISMISS FOR FAILURE TO STATE
8  FRIEDMAN; RICHARD BALDWIN;   ) A CLAIM
   MELANIE KING; KATHERINE      )
9  CROSIER; TRAPPEUR RAHN;      )
   CHRISTINE, TRECKER; DENNIS   )
10 PADLOCK; KELLY BREHM; TOM    )
   HEIDEN; GARRY BELEN; WALTER  )
11 MIRANDA,                     )
                                )
12           Defendants.        )
   _____ )
13

14

15               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DERRICK K. WATSON,
16            UNITED STATES DISTRICT COURT JUDGE

17

18 APPEARANCES:

19

20 For the Plaintiffs:        LUNSFORD D. PHILLIPS, ESQ.
                              7 Waterfront Plaza, Suite 400
21                            500 Ala Moana Blvd.
                              Honolulu, Hi 96813
22

23

24

25

```
 1   APPEARANCES: (CONTINUED)

 2   For the Defendants:          DAVID R. MAJOR, ESQ.
                                  BRIAN M. MULLIN, ESQ.
 3                                Bays Lung Rose & Holma
                                  Topa Financial Center
 4                                700 Bishop St., Suite 900
                                  Honolulu, HI 96813
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   Official Court Reporter:    Gloria T. Bediamol, RPR RMR CRR FCRR
                                  United States District Court
22                                300 Ala Moana Boulevard
                                  Honolulu, Hawaii 96850
23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

 1    May 6, 2019                                    10:32 a.m.

 2          THE CLERK:  Calling Civil Number 18-00295-DKW-RT,

 3    Garrick Lau, et al. versus Association of Apartment Owners of

 4    Honolulu Park Place, et al.

 5          This case has been called for hearing on defendants'

 6    motion to dismiss for failure to state a claim.

 7          Counsel, please make your appearances for the record.

 8          MR. PHILLIPS:  For the plaintiffs, Your Honor,

 9    Lunsford Phillips.  With me at counsel table are the

10    plaintiffs.  On the far left Garrick Lau and behind us Mabel

11    Lau, and next to me to help me with paperwork is Wilson Lau.

12          THE COURT:  All right.  Good morning to all four of

13    you.

14          MR. MAJOR:  Good morning, Your Honor.  David Major and

15    Brian Mullin on behalf of the defendants.

16          THE COURT:  Good morning to both of you as well.

17          What I really want to hear from the parties about this

18    morning isn't the pending motion.  I don't feel like I need

19    much assistance really; I don't really need any assistance in

20    ruling on this motion.

21          What I am curious about is what this case is about.

22    And when I say that, I don't mean on the surface what is this

23    case about.  I can read that.  I want to know what is really at

24    issue in this case.

25          So I don't care who cares to address it first.

1        MR. PHILLIPS:  May I, Your Honor?

2        THE COURT:  Sure.

3        MR. PHILLIPS:  The Court, through the pleadings, is

4   aware of the basic facts.  There was, up until a period -- what

5   was it now, has been two years?  Before about two years ago for

6   a period -- a long period, ten years almost, after the Laus

7   acquired this modified van, they were allowed to park on an

8   availability basis, no assignment, no proprietary interest in

9   any particular space, first come first serve, if there is

10  available, they were able to park in the guest parking.  This

11  was important because they cannot use the parking on the

12  three -- I think there are three or four levels of parking that

13  are also available.

14       THE COURT:  At the risk -- Mr. Phillips, at the risk

15  of being rude, I'm going to be rude.  I can read that.  That's

16  exactly what I asked not to hear about.  I know what this case

17  is about on its surface.  So the question is, I sent all of you

18  twice, now it appears that you don't understand -- I don't mean

19  you personally, Mr. Phillips -- but the parties don't appear to

20  understand why I did it.  I sent you twice to a settlement

21  conference now with two different magistrate judges.  And

22  you've come back both times telling me that you aren't able to

23  reach a resolution in a case that involves a parking space.

24       Is that the kind of dispute that two capable firms

25  with lawyers leading their efforts aren't able to reach

1  resolution on a goddamned parking space, that it's so critical

2  that you need to involve this Court?  It seems unprofessional

3  almost to me that the parties have not been able to reach

4  resolution on this, and I'm incredibly disappointed in the fact

5  that you have not been able to do that.

6          MR. PHILLIPS:  I agree.

7          THE COURT:  If you need resolution on this motion, I'm

8  happy to do it.

9          MR. PHILLIPS:  This is a no-cost, no-must policy

10 change that can be and should have been given.  We don't

11 understand why it was created by them by taking away that

12 permission in the first place.  So I'll let them answer.

13         THE COURT:  Mr. Major.

14         MR. MAJOR:  Yes, Your Honor.  Well, to answer your

15 question simply, they have asked for a lot of money and they

16 have asked for a parking space that the Association can't

17 functionally give them.  This all stems from the Association --

18         THE COURT:  I think that's a bunch of crap.

19         MR. MAJOR:  Okay, Your Honor.  Well, I understand your

20 position on that.

21         THE COURT:  No, you don't.  How can you understand my

22 position when I haven't begun to explain it to you?

23         MR. MAJOR:  Well, I understood --

24         THE COURT:  The notion that you think that they have

25 asked for a proprietary interest and therefore that's why your

 1   client can't give them what they want, where is that?  Show me

 2   in their complaint where they've asked for a proprietary

 3   interest in this parking space?

 4          MR. MAJOR:  They asked for --

 5          THE COURT:  Show me in the complaint.  Can you do

 6   that?

 7          MR. MAJOR:  Your Honor, I see that you have a position

 8   on this particular subject matter; I don't think it does us any

 9   good to argue about it.  I'm not trying to argue with you.

10   What I'm trying to do is answer your initial question as to why

11   we are all standing here.  And I'm happy to do that.  But if

12   you just want to tell me that you think the parking space issue

13   is not a big deal, then I don't know that that's going to be

14   productive because you're not going to understanding how we're

15   still standing here.  If it wasn't a big deal, we would not

16   have gone through two settlement conferences and been unable to

17   resolve it.  It is a big deal, and it's a big deal for a

18   reason.  I'm happy to tell the Court that if you want.

19          THE COURT: I want you to answer my question.

20          MR. MAJOR:  If they are requesting a proprietary

21   interest?  If they are requesting the right to use a parking

22   spot whenever they deem fit, then, yeah, that's a land interest

23   in a parking stall.

24          THE COURT:  You're not getting it; okay?  I've asked

25   you twice now, Mr. Major.

1          MR. MAJOR:  Yes.

2          THE COURT:  Where in the complaint -- this is the

3    motion to dismiss, is it not?

4          MR. MAJOR:  This is a motion to dismiss, Your Honor.

5          THE COURT:  Okay.  So I have to rule based on what the

6    complaint alleges, not what you concoct in your briefs.

7          MR. MAJOR:  Okay.

8          THE COURT:  So you tell me, and you've said it again

9    now orally, you've written it twice in your opening brief and

10   in your reply that this is something that they demanded, a

11   proprietary interest that the AOAO is incapable of providing to

12   them even if it wanted to.  So where in the complaint tells me

13   that?

14         MR. MAJOR:  Our position is that at the relief on page

15   6, the plaintiffs request equitable relief in the form of an

16   injunction allowing the defendants to allow the plaintiffs to

17   park their van in the HPP guest parking forthwith.  So they

18   want an order establishing a right to park wherever they want,

19   as long as they want, in the guest parking.

20         THE COURT:  They want permission to park in a guest

21   parking spot.  So that to you conveys the notion that they want

22   a proprietary conveyed interest in property?

23         MR. MAJOR:  They definitely want an interest.  They

24   want the right to park there when they don't have any right to

25   park there for long term.

1     THE COURT:  So answer my second question.  I'm looking

2  at the same paragraphs; I don't read it the same way.  And

3  you're probably right, continuing to discuss it from that

4  perspective is not particularly productive.  But you are

5  pointing to the same paragraphs that I'm reading, I just wanted

6  to make sure that I wasn't missing something or overlooking

7  something.  So you tell me, what is at issue?  The fact they

8  want a parking spot and they want too much money, that's what's

9  holding a resolution up?

10     MR. MAJOR:  Yes.  But if you want a little background,

11  what happened was is the board members got together and they

12  organized, and one of the board members offered his own

13  personal parking space in exchange for one of the Laus' parking

14  spaces, and that was -- they thought they had an arrangement

15  basically where he could make it to that floor and he could

16  park in that spot and that would be a long-term interest the

17  board would be aware of and follow through with, and then that

18  got backed out on and this complaint got filed.

19     And so the Board, whether you think it's right or

20  wrong, tried their best to work this situation out with the

21  Laus, and we have all kinds of letters from Mr. Lau blowing

22  with the wind, very angry, very happy with the board.  And that

23  will come into evidence later on.  And so what you have is a

24  situation where the Board put in a lot of effort to try and get

25  this situation resolved.  They thought they had it resolved and

1    then this complaint came because they were still informing

2    Garrick that he could not park in the guest parking stalls, and

3    then we get this complaint and we get a demand for $150,000 for

4    a parking space.  And what they have done over time, realizing

5    that the interest I guess is something that would be barred, is

6    they've continuously softened this approach to, Okay, all we

7    want to do is the right to park there.  Well, is it an

8    exclusive right?  How is that right defined over time?  What

9    does that mean?  And these board members are all a little wary

10   of this proposal at this point.

11       And so, with all due respect, I'm not sure how much

12   experience the Court has with boards, it takes a little bit of

13   time to get them back around after they put their hand on the

14   stove.  So that's why we are standing here right now.  And

15   that's sort of what I can tell the Court about the

16   circumstances.

17       THE COURT:  This space that one of the board members

18   offered, I gather that's not on the ground floor?

19       MR. MAJOR:  It's on the first floor, I believe.

20       THE COURT:  Which is something other than a ground

21   floor?

22       MR. MAJOR:  Well, we rode in the van -- it's the

23   second floor ramp that he hit hard.  And so that was basically

24   the circumstances.

25       THE COURT:  So this space that was offered still

1   requires use of the ramp, maybe I should ask it that way?

2           MR. MAJOR:  The first ramp, yes.  But he doesn't have

3   to drive to his floor, I believe.

4           THE COURT:  But all of the ramps allegedly -- I'm not

5   expecting you to concede any of this -- but in their view, all

6   of the ramps result in the same kind of damage to the

7   undercarriage of the van?

8           MR. MAJOR:  Yes, Your Honor, that's why we didn't

9   argue this in a motion to dismiss because, yes, they did state

10  that in their complaint.  So we are not trying to argue -- we

11  didn't argue the granting of the accommodation via the space --

12          THE COURT:  So what is the reasonable accommodation

13  that you feel they've rejected?

14          MR. MAJOR:  Well, they rejected the space for sure --

15  to swap out the space.

16          THE COURT:  Is that what you're referring to though?

17  Because your papers say they concede a reasonable accommodation

18  that you offered.

19          MR. MAJOR:  No, Your Honor.  The papers --

20          THE COURT:  That's not what it says?

21          MR. MAJOR:  No, it does say that, but we are not

22  talking about the same subject matter.  You're kind of jumping,

23  Your Honor, respectfully.  You asked why we are here, then you

24  obviously were not -- didn't like our approach on the relief.

25          THE COURT:  It's because I'm entitled to have my

1   questions answered.  I don't have to listen to what you say.  I

2   want my questions answered, right?

3           MR. MAJOR:  I'm trying to get to it, Your Honor.

4           THE COURT:  Okay, but you're telling me that's not why

5   I'm jumping around for you.  My question is, you refer to

6   plaintiffs concede that defendants made it -- are you

7   disgusted, Mr. Major?

8           MR. MAJOR:  No, I'm not at all. I'm just trying to

9   listen to the Court --

10          THE COURT:  Okay.  By your body language, it appears

11  that you are.

12          MR. MAJOR:  Your Honor, I'm not trying to infer that

13  at all.

14          THE COURT:  In page 3 of your reply brief, the very

15  second sentence on the top of the page, you say that plaintiffs

16  concede that defendants made a reasonable accommodation and

17  that -- what?  I'm reading.  You're telling me that's not what

18  it says?

19          MR. MAJOR:  I'm not saying that.

20          THE COURT:  Plaintiffs concede that defendants made a

21  reasonable accomodation upon request all of which were rebuked

22  by the plaintiffs.  So I'm trying to understand what that

23  refers to.

24          MR. MAJOR:  I believe -- let me look, Your Honor.  Do

25  they attach documents on the parking stall?  Page 3.

1          Your Honor, I don't know it off the top of my head why

2     it was worded that way.  If I could state our fundamental

3     premise for that part of the motion?

4          THE COURT:  Sure.

5          MR. MAJOR:  Our fundamental premise for that part of

6     the motion is that the point of accommodation law is to take a

7     person with a handicap and apply the same standards to them to

8     allow them reasonable use that you do to a homeowner.  And so

9     what you look at in preferred parking cases is all these cases

10    out there saying that a preferred parking stall is not a

11    reasonable accommodation situation.

12         Here you have a situation where the family lived there

13    for a while, the son bought a vehicle -- he bought a vehicle

14    that doesn't fit in the spot that he already has and exists.

15    He has a place to park.  Just like any other regular -- not

16    handicapped person, you -- if you buy a car that doesn't fit in

17    the parking garage, you don't get to then get a guest stall.

18    And that's the point is that similarly situated people, whether

19    handicapped or not, are treated the same under the similar

20    circumstances.  And so the accommodation -- if he has a spot

21    and he bought a vehicle that doesn't fit, then all he is

22    requesting is a preferred parking spot.  And that's the

23    essential premise.  So I don't know why I use the word

24    "conceded."  I think I was arguing about that fundamental

25    premise, but I don't have a recollection.

1          THE COURT:  So the facts, as you guys see it, and I'm

2     not suggesting that it's not true, I don't know, all I see is

3     the complaint at this stage, is that they purchased the van

4     knowing what the situation was?

5          MR. MAJOR:  There is no doubt that they purchased the

6     van knowing the situation.

7          THE COURT:  All right.  And so they brought this upon

8     themselves in some ways; is that fair?

9          MR. MAJOR:  Just like anybody who buys a car that

10    doesn't fit in their parking garage.

11         THE COURT:  Okay.

12         MR. MAJOR:  That was it.  And so I'm not sure why I

13    used the word "conceded," but I think I meant that he conceded

14    that he has a stall to park in.  And then if the vehicle

15    doesn't fit or go up the ramp or whatever, just like if I go

16    out and buy a Ferrari and I can't drive it up the ramp, then I

17    don't get a guest park parking stall.  And those are the same

18    or similarly situated circumstances, the car doesn't fit.

19         THE COURT:  The parking space that the Laus have I

20    assume there is at least one or more deeded spaces that they

21    get for owning property?

22         MR. MAJOR:  Yes, Your Honor.  They have two spots.

23         THE COURT:  Two spots.  And their two spots are

24    adjacent to one another?

25         MR. MAJOR:  You know, I don't know if they are front

1    back or side to side.

2            THE COURT:  But they are on an upper floor?

3            MR. MAJOR:  They are on the second floor, I believe.

4            THE COURT:  Is that labelled two --

5            Hang on.  You guys -- the Laus will have a chance to

6    respond.

7            MR. MAJOR:  I'm not trying to establish these facts.

8            THE COURT:  No, no, I'm just curious.  I'm just

9    curious.  So when you say the second floor, is that labelled

10   two or something other than two?

11           MR. MAJOR:  I'd have to defer to them, Your Honor.

12           THE COURT:  Okay.  So it might be G and then one and

13   then two going up?

14           MR. MAJOR:  Yeah, I know the ramp goes down to the

15   guest parking as opposed to up to the other ones.  And the

16   stalls are on the subgrade floor.

17           THE COURT:  Okay.  Well, I've not been there.

18           MR. MAJOR:  I have not been there either.  I only saw

19   the pictures.

20           THE COURT:  Perhaps Mr. Phillips will know.  All

21   right.  Is there anything else that you wish to advance?  I've,

22   of course, read the papers.

23           MR. MAJOR:  I think -- well, if plaintiffs are

24   prepared to commit -- this has never come out the way

25   Mr. Phillips stated it, but if plaintiffs are prepared to

1  commit to the nonexclusive use, first come first serve,

2  basically something that just says -- guarantees basically

3  nothing with respect to a parking space, if it's full, then

4  that hasn't been discussed.  That was never raised at all in

5  any of the discussions.  So that's a totally different thing, I

6  think.

7       THE COURT:  Well, that's why.  I mean, that's why I

8  asked you all to get together with two different judges now

9  because that's what I read in their papers.  Now, that may not

10  be their position today and maybe that wasn't their position a

11  month ago, I don't know, but when I read their papers and the

12  attachments, which honestly are not proper on a motion to

13  dismiss, some of the stuff that they attached in terms of the

14  declarations and some of the underlying correspondence with the

15  board it looks like, that seemed to me to be their approach,

16  which is what exactly what you said:  The nonexclusive use of

17  one of the guest spots and if all of the guest spots are full

18  they are out of luck.

19       And what they said, if I'm reading their

20  correspondence correctly, is there is something like 44 spaces,

21  it's virtually always the case that something is available and

22  that they are prepared to live with whatever that might be.

23  Even if it might be the most distant of those 44 spaces

24  relative to the entrance, and even if there are no spaces

25  available, then they either park outside, I assume, I don't

1   know where this building is.  I'm sure there is probably
2   something on the street that might be available if they prefer
3   that as an alternative to going up the ramp and damaging their
4   vehicle.  So that's what I understood their request to be.
5         Now the money part I don't know anything about.  It
6   seemed like a few hundred dollars in existing damages to the
7   van that they were looking for, and it seemed for that reason
8   to be not a big obstacle from where I'm sitting.
9         Now if they're asking for $150,000 as you just said,
10  and I have no reason to dispute what you're saying, that
11  seems -- I can maybe see where the defense is coming from with
12  that in mind, even if you include attorneys fees in that number
13  separate and apart from whatever damages the Laus themselves
14  may have incurred.
15        So that gives me perspective and that helps me see
16  where at least the AOAO is coming from.  I appreciate that.
17        Mr. Phillips.
18        MR. PHILLIPS:  Yes, Your Honor.  That's the position
19  the Court correctly understands their position, and that was
20  their position before they ever went out and got a lawyer.
21  They went and got a lawyer because that position, that request,
22  which seems imminently reasonable, was denied.  They were
23  forced to bring suit.  They did make a demand and the response
24  was a term of, I guess defense insurance law, I'm not familiar
25  with it, a walk-away.  That was their position.  Their position

1   in response to our demand was walk away, which I inferred meant

2   both sides just forget it and pretend it never happened or

3   something.

4        So, anyway -- and since then because this case is

5   ridiculous to litigate, but the magistrates, if I may,

6   suggested that you guys try to work something out.  And one

7   idea that was floated was perhaps a different vehicle could be

8   obtained.  The details of who and what were not discussed, but

9   just the concept of rather than changing anything else, get a

10  further modified van or get a different van that would not have

11  this same problem of the bottoming out on the ramp.

12       And we met their counsel and defense counsel and

13  looked -- they saw -- we drove the van up and they could see

14  how it scraped, and then we gave -- the Court gave us a month

15  or something, six weeks, to investigate whether or not there

16  was another vehicle that would not have that same problem.  And

17  they got back to us at the end of that time and said, I'm sorry

18  we can't find any other vehicle that will not have this

19  problem.

20       So that concept for settlement was tried and

21  unsuccessfully, not for the want of trying, but -- I can't

22  force them to settle.  But it's ridiculous.

23       THE COURT:  Did you make known, and again I don't

24  mean, when I say "you," I don't mean you personally, did the

25  parties make known to either of the two magistrate judges the

1    issues as far as the parking space itself is concerned?  In

2    other words, what you both appear now to agree is at least a

3    good start to a discussion which is the nonexclusive use, not a

4    conveyed interest, in any parking space, but a guest parking

5    space on a come-as-you-are basis, and if it's all full then the

6    Laus are out of luck.  Was that something -- you seem to say

7    that was on the table.  I don't know if you're now saying that

8    it's no longer on the table, but Mr. Major has suggested that

9    that might be the starting point of a fruitful discussion.  At

10   least he has intimated that.  Are we on the same page there?

11   Is it worth going back to Judge Trader who is now the current

12   magistrate judge, or are we beating a dead horse?

13          I don't want to send you back.  I know you both made

14   efforts twice now at my request, I don't want to send you back

15   a third time if you're both telling me that it's just a waste

16   of time at this stage.  We will move on with the litigation if

17   that's the case, but it just seems like the more we spend, the

18   more time you spend litigating this case, the more difficult

19   it's going to be to try to resolve things as we go forward.

20          Both sides are going to spend a lot more money than,

21   it appears to me at least, this case is worth.  And that's

22   where I kind of draw the line.  I don't want either side to do

23   that.  I don't think it's fruitful for your clients.  But I

24   can't, just like you, you can't force them to settle, I can't

25   force either one of you to settle, that's up to you.  You've

1    got to want to do it, both sides have got to want to do it.

2    But if this is the starting point of that discussion, then

3    Magistrate Judge Trader I know is willing and prepared to get

4    back together with you all if you think there is some chance

5    there.

6              MR. PHILLIPS:  I believe that he understands that that

7    is the plaintiffs' position that we are not looking for any

8    sort of assigned space on the ground floor, we are not looking

9    for any proprietary interest in any particular space.  We want

10   to continue, just like we did for ten years, which is to park

11   if there is an open space.  I believe he understands that's

12   the -- that's the plaintiffs' position.

13             THE COURT:  So before --

14             MR. PHILLIPS:  That's always been.

15             THE COURT:  You said as of two years ago, before the

16   Board didn't allow this situation to exist any longer, that is

17   how you were operating or your clients were operating?

18             MR. PHILLIPS:  For ten years up to two years ago.  And

19   then for a reason that I'll be interested to learn through

20   discovery by asking the Board:  Why the change?  As far as we

21   understand, there's never been -- never been any complaint

22   about the prior situation, arrangement.  That's why we hope

23   that there is not bad faith or ill will behind the decision to

24   stop the ten-year practice.

25             THE COURT:  But this ten-year practice that you're

1  talking about is what we are talking about?

2      MR. PHILLIPS:  Yes.  If there is an open space in the

3  guest parking.

4      THE COURT:  All right.  And if there isn't, then

5  you're just out of luck, right?

6      MR. PHILLIPS:  SOL.

7      THE COURT:  And there was nothing deeded to the

8  Laus -- nothing proprietary given to them by the Board.

9      MR. PHILLIPS: Absolutely not.  Never was, nobody

10  discussed it, nobody even thought of it or don't want it, there

11  is no need.  It was working out fine, just fine.  Like I said,

12  there's so many places.  There's a couple dozen open spaces 29

13  out of 30 days.

14      THE COURT:  Mr. Major, is this something that you guys

15  are willing to consider?  If not, that's fine.  Like I said,

16  that's what we are here for.  I'm happy to rule on this motion

17  and any others that come my way.  It just doesn't seem to be

18  maybe the most productive use of your client's money or the

19  Laus' money; but if you want that result, then I can't force

20  you.  I think you've participated twice now at my request, and

21  I don't feel like I can or should ask you to do more if you

22  don't want to.

23      MR. MAJOR:  Your Honor, we are going to go back to our

24  clients with the characterization that was made today about the

25  arrangement.

 1        THE COURT:  I've heard it myself, so there ought not
 2   to be any backtracking on the part of the Laus.
 3        MR. MAJOR:  Okay.
 4        THE COURT:  We've got it on the record.  All you've
 5   got to do is ask for a transcript and we'll provide it to you.
 6   This is their position, and I'll let the magistrate judge know
 7   that as well myself as soon as we are done.
 8        MR. MAJOR:  I'm going to do that.  I would say that
 9   the judge probably shouldn't set something with the magistrate.
10        THE COURT:  Here's what I'll do.  Is a week long
11   enough or a couple of weeks to make a decision?
12        MR. MAJOR:  I would request the Court rule on -- this
13   is holding out -- we filed this for a reason and we think the
14   Court's decision either way is informative and helpful.
15        THE COURT:  I understand.  I completely understand.  I
16   get how sometimes clients need decisions, and if this is one of
17   those situations, again I'm happy to comply.  That's what we
18   are here for.  At the same time, I also understand that the
19   parties don't want -- if you sense or you think that the
20   decision that's forthcoming is adverse to you, sometimes
21   clients don't want an adverse decision out there.
22        And so what I'm going to do is this:  I'll give you
23   20 days.  Well, I'll give you three weeks, that's a little bit
24   cleaner.  What's today's date?  We are at the 6th.  Well, three
25   weeks is -- so we will give you until the 28th.  The 27th is

1    actually a holiday, it's Memorial Day.  We will give you until
2    the 28th.  I'm not going to do anything right now until you
3    tell me, sometime between now and the 28th, what you wish for.

4         If you are prepared to get back to Judge Trader with
5    the parties on the other side and conduct what would be a third
6    settlement conference with this being the baseline -- I know
7    you explored other options with the magistrate judge including
8    the purchase of a van, I'm fine with that not being on the
9    table.  If you looked at that and that doesn't work and if this
10   is the only option now, with this being the type of space that
11   they have now in my eyes committed to, that that be the only
12   option to discuss as the front -- the center piece of a
13   settlement, I'm good with that.  You let me know whether your
14   clients are willing to participate in such a third session, any
15   time between now and the 28th.

16        At the same time, you let me know whether they are
17   willing to participate in such an effort, you let me know
18   whether you want an actual written ruling on the motion.  The
19   two don't have to be -- they can be mutually exclusive, you can
20   tell me we want you to hold the ruling in abeyance while we
21   pursue these settlement efforts, you can also tell me we're
22   willing to pursue these efforts but we need a ruling -- or I
23   guess the third permutation is we need a ruling and we are not
24   willing to participate.  Those are the three outcomes, it seems
25   to me, and I'm happy to live with any of them; is that fair?

1          MR. MAJOR:  That sounds fair.

2          THE COURT:  We will wait -- if the parties could stand

3     down, I think it would behoove everyone not to incur any

4     additional costs because that's only going to make -- if you do

5     sit down with the magistrate judge -- things more difficult to

6     resolve if you spend more more.  So I ask that you don't file

7     any other motions, you try to attorneys fees to a minimum until

8     we know what the AOAO wishes to do between now and the 28th.

9     Is that fair for everyone?

10          MR. PHILLIPS:  Yes, Your Honor.

11          MR. MAJOR:  Yes, Your Honor.

12          MR. PHILLIPS:  May I ask --

13          THE COURT:  Sure.

14          MR. PHILLIPS:  We support a prompt settlement

15     conference.  But so that we don't bid against ourselves as of

16     yet, defense hasn't made any settlement offer other than drop

17     it and forget about it.  So to kick it off, if we are going to

18     have a settlement, would the Court instruct them to submit an

19     offer?

20          THE COURT:  Well, I'll do this:  I will -- I'm not the

21     one conducting the settlement conference, it would be

22     Magistrate Judge Trader; so I'm going to leave it to him, but

23     I'm going to wait for the defense to tell us whether they are

24     willing to participate.  I think that's the very first step

25     before we make any demands or conditions on the AOAO.

1          Are they willing to sit down with you all for this

2     third round?  If they are, then I'll leave it to Magistrate

3     Judge Trader.  I can't predict whether he thinks that would

4     facilitate things or stop things in their tracks before you all

5     even get into the room.  That's up to him to decide, and I'm

6     not going to step on his toes as far as that goes.  But I'm

7     willing to mention it to him as something that he ought to give

8     some thought to in ordering -- in issuing a settlement

9     conference order.

10          Again, if the defendants wish to participate, he can

11    make that request or he can find that not to be productive to

12    your go-round, but that's all I'm willing to commit to; okay?

13    Anything else.

14          MR. GARRICK LAU:  Your Honor, I would like to say

15    something.

16          THE COURT:  You're represented.  You're entitled to be

17    here, but you're not entitled to say anything.  If you want to

18    speak --

19          MR. PHILLIPS:  If I can have a brief moment.

20          (Discussion was off the record.)

21          THE COURT:  Mr. Phillips, do you wish to say anything

22    further?

23          MR. PHILLIPS:  More tales of woe, which we don't need

24    to add on.  There is no change in our position or our request.

25          THE COURT:  All right.  You were having a brief

 1    discussion with Mr. Garrick Lau, and the court reporter could
 2    only hear bits and pieces of it so I instructed her, just so
 3    you know, not to report that.  I assume that was a private
 4    discussion even though we could hear some of it, okay?  So that
 5    won't be part of the transcript.
 6              MR. PHILLIPS:  I can't whisper.  I'm bad of hearing.
 7    I can't hear a whisper.
 8              THE COURT:  All right.  So that's not part of the
 9    record, and you have no further comments.
10              Mr. Major, I appreciate your efforts regardless of
11    what the outcome may be with your clients, so we will await for
12    your response by the 28th.
13              MR. MAJOR:  We will be prompt, Your Honor.
14              THE COURT:  All right.  We are in recess.
15              (Proceedings were concluded at 11:06 a.m.)
16
17
18
19
20
21
22
23
24
25

1           COURT REPORTER'S CERTIFICATE

2           I, Gloria T. Bediamol, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

5    true, and correct transcript from the stenographically reported

6    proceedings held in the above-entitled matter and that the

7    transcript page format is in conformance with the regulations

8    of the Judicial Conference of the United States.

9

10          DATED at Honolulu, Hawaii, June 14, 2019.

11

12

13                                   /s/ Gloria T. Bediamol

14                                   GLORIA T. BEDIAMOL.

15                                   RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25