IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| GARRICK LAU, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> HONOLULU PARK PLACE, *et al.*, <br><br> Defendants. | Case No. 18-cv-00295-DKW-RT <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This lawsuit arises from allegations that Plaintiffs had for some time parked their wheelchair-accessible van in designated guest parking spots without repercussion, even though condominium residents, like Plaintiffs, were prohibited from doing so pursuant to Defendants' parking regulations. When Defendants eventually towed Plaintiffs' van and refused to grant Plaintiffs an accommodation to resume parking in the guest parking area, Plaintiffs brought this action under the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. Section 3601 *et seq.*, seeking compensatory and injunctive relief.

Defendants have now moved for summary judgment (Dkt. No. 68) on the basis that Plaintiffs' request for injunctive relief is moot because Defendants have formally granted Plaintiffs permission to park in guest parking, and Plaintiffs' claims for damages should be dismissed because Plaintiffs have not supported their claims with evidence. For the reasons explained below, Plaintiffs' claim for prospective

injunctive relief is moot, but a jury trial is warranted on the sole issue of Plaintiffs' damages for emotional distress. Accordingly, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

## FACTUAL & PROCEDURAL BACKGROUND

**A.      Factual Background**

The underlying facts in this case are largely undisputed. Plaintiffs Wilson and Mabel Lau own two units at the Honolulu Park Place condominiums (HPP), where they live with their adult son, Plaintiff Garrick Lau.[1] Because Garrick is a quadriplegic and depends on a wheelchair for mobility,[2] the Laus use a minivan that has been modified to accommodate Garrick's wheelchair, such that the van's floor and undercarriage are closer to the ground than the manufacturer's specifications.[3]

Residents at HPP have assigned parking spaces near their respective units.[4] The Laus' assigned parking spaces are on the third level of the parking structure.[5] To get there, the Laus must drive up several ramps, and in the process, the undercarriage of the modified van allegedly strikes the ground.[6] HPP guest parking, on the other hand, is on the ground level and does not present the same problem for

---

[1] Dkt. No. 69, ¶ 1; Dkt. No. 74, ¶ 3. Where appropriate, the Court will refer to each Plaintiff by their first name for brevity and to avoid confusion.
[2] Dkt. No. 69, ¶ 1; Dkt. No. 74 at 2.
[3] *See* Dkt. No. 69, ¶ 3; Dkt. No. 1, ¶ 15.
[4] Dkt. No. 69, ¶ 4; Dkt. No. 69-4, ¶ 36.
[5] Dkt. No. 69-6, ¶ 56.
[6] Dkt. No. 1, ¶ 17; Dkt. No. 68-1 at 4.

the Laus.[7] HPP's written policies, however, provide that residents are not permitted to park in any of the (44) designated guest parking spaces.[8] "Violators of any [HPP] parking regulations risk having their vehicles towed away at their own expense."[9]

Notwithstanding HPP's guest parking policy, it is undisputed that, for some time, the Laus regularly parked in HPP's dedicated guest parking area without consequence.[10] In 2017, HPP revoked its tacit permission.[11] According to Defendants, this occurred at a meeting with Garrick on June 20, 2017.[12] In any event, the parties agree that the Laus continued to park in guest parking.[13] As a result, on July 10, 2017, the Laus' vehicle was towed pursuant to the instructions of HPP security personnel.[14]

Wilson subsequently sent a letter to the HPP President and Board of Directors (Board) on August 1, 2017.[15] In the letter, Wilson requested that the Board allow

---

[7] Dkt. No. 69, ¶ 4; Dkt. No. 77-1, ¶ 7; *see also* Dkt. No. 1, ¶¶ 13, 17.
[8] *See* Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 34–35; Dkt. No. 69-1, ¶ 7. The guest parking at HPP is one of the common elements owned in fee simple by all of the individual apartment owners. Dkt. No. 69-4, ¶ 34. HPP's policy prohibiting residents from using guest parking has been on file with the Bureau of Conveyances for the State of Hawai'i since June 21, 1989. Dkt. No. 69-1, ¶ 4; *cf.* Dkt. No. 69-8 at 1.
[9] Dkt. No. 69-4, ¶ 50.
[10] Dkt. No. 69, ¶ 6. Although the Laus have allegedly lived at HPP for more than (26) years, Dkt. No. 74-2 at 1, it is unclear from the record as to how many years prior to this dispute that the Laus parked their vehicle in HPP guest parking without any repercussion. *See* Dkt. No. 69-1, ¶ 8 (unspecified number of "years"); Dkt. No. 47 at 4, 19–20 (two years or ten years); Dkt No. 74-2 at 1 ("more than five (5) years").
[11] Dkt. No. 77-1, ¶ 6; Dkt. No. 1, ¶ 14.
[12] Dkt. No. 69, ¶ 7; Dkt. No. 69-1, ¶¶ 9–10.
[13] Dkt. No. 69, ¶ 8; Dkt. No. 74 at 2.
[14] Dkt. No. 74-3 at 2; Dkt. No. 69, ¶ 8.
[15] *See* Dkt. No. 69, ¶ 9; Dkt. No. 74 at 2; *see also* Dkt. No. 74-2 (Wilson's letter to HPP).

the Laus to "park at the guest parking as before . . ."[16] The Board President offered to exchange one of the Laus' parking spaces with another unit's parking space located close to the building entrance, and the President himself even offered to exchange his parking space for Garrick's.[17] The Laus rejected these alternative options, none of which appear to have offered them the ground floor space that they wanted, and, instead, Wilson and Mabel renewed their parking request at the Board of Director's August 16, 2017 meeting, requesting that "the Board grant [their] son a reasonable accommodation to allow him to park in designated Guest parking stalls."[18]

On August 23, 2017, the Board denied the Laus' request for an accommodation in a letter issued by counsel.[19] Among other things, the Board explained that in light of HPP's guest parking policy, it could not grant a resident the right to use the guest parking area without an affirmative vote by the membership of the HPP Association of Apartment Owners (AOAO).[20] The Laus then filed this lawsuit on August 2, 2018, asserting one count under the FHAA. Dkt. No. 1.

---

[16]Dkt. No. 74-2 at 1.
[17]Dkt. No. 74-3 at 2; Dkt. No. 69-1, ¶ 13.
[18]Dkt. No. 74-3 at 2.
[19]Dkt. No. 74-3 at 3; Dkt. No. 69, ¶ 10; Dkt. No. 77-1, ¶ 12.
[20]*See* Dkt. No. 74-3 at 2–3; Dkt. No. 69, ¶ 10; Dkt. No. 74 at 2.

## B.     Procedural History

On May 6, 2019, the Court heard oral argument on Defendants' Motion to Dismiss.  Dkt. No. 38.  At the hearing, the Laus' counsel represented that it "is the plaintiffs' position that we are not looking for any sort of assigned space on the ground floor, we are not looking for any proprietary interest in any particular space. We want to continue, just like we did for ten years, which is to park if there is an open space."[21]  In other words, the Laus sought permission to park in guest parking "[i]f there is an open space in the guest parking . . . And if there isn't, then [the Laus are] just out of luck . . ."[22]  Indeed, the Laus later confirmed in response to interrogatories that these statements "accurately reflect" the parking accommodation they requested from Defendants.[23]

On July 26, 2019, the HPP AOAO, through counsel, sent a letter to the Laus' counsel, granting Garrick the following parking accommodation:[24]

1. The non-exclusive use of a single guest parking stall for Garrick Lau to park his modified wheelchair accessible vehicle in the dedicated guest parking at [HPP].

2. [The] use of the guest parking will be subject to availability and if no such parking spot is available, Garrick Lau will be required to park elsewhere off property.

---

[21]Hr'g Tr., Dkt. No. 47 at 19:7–11.
[22]*See id.* at 20:2–6.
[23]*See, e.g.*, Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 7–12.
[24]Dkt. No. 69-3 at 1; Dkt. No. 69, ¶ 14; Dkt. No. 74 at 2.

3. No property interest is passing to Garrick Lau as a result of the accommodation.

The Laus later admitted that as of July 26, 2019, Garrick had the non-exclusive right to park in a single guest parking space at HPP,[25] and further agreed that "Defendants have provided [Garrick] a reasonable parking accommodation," *i.e.*, "reasonable access to" and "equal use and enjoyment of his dwelling at HPP."[26] As a result, Defendants moved for summary judgment. Dkt. No. 68.

## **STANDARD OF REVIEW**

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A *genuine* issue of *material* fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249; *see Scott v. Harris*, 550 U.S. 372, 380 (2007). "[A] complete failure of proof concerning an essential element" of a claim "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

---

[25]Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 20–21, 26. In fact, at the hearing on Defendants' motion for summary judgment held on November 8, 2019, the Laus' attorney indicated that the Laus have resumed parking in HPP guest parking since July of 2019.
[26]Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 24–25, 27.

"A moving party without the ultimate burden of persuasion at trial"—such as Defendants in this case—"has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To meet its initial burden, the moving party must either: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) "demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element" of its claim at trial. *Celotex*, 477 U.S. at 331; *Jones v. Williams*, 791 F.3d 1023, 1030–31 (9th Cir. 2015); *cf.* Fed.R.Civ.P. 56(c).

Once the movant has done so, the opposing party cannot rely on the mere hope that the trier of fact will disbelieve the movant's evidence, but instead "must present affirmative evidence" to avoid summary judgment. *See, e.g.*, *Anderson*, 477 U.S. at 256–57; *Teamsters Local Union No. 117 v. Wash. Dep't of Corr.*, 789 F.3d 979, 994 (9th Cir. 2015); Fed.R.Civ.P. 56(c)(1). This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). By the same token, "evidence [that] is merely colorable, or is not significantly probative" is not enough, *Anderson*, 477 U.S. at 249–50, and "a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252. To the extent probative, supporting evidence does exist, it must be "set forth in the opposing papers with

adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) ("General references without page or line numbers are not sufficiently specific."); Fed.R.Civ.P. 56(c)(3) (a "court need consider only the cited materials").

## **DISCUSSION**

The Laus assert only one claim in their Complaint—that Defendants violated Section 3604(f)(3)(B) of the FHAA by refusing to provide a parking accommodation in HPP guest parking. Dkt. No. 1, ¶¶ 1, 22–25; Dkt. No. 75 at 2. To establish a claim under the FHAA based on a failure-to-accommodate theory, a plaintiff must show that: "(1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (quoting *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)); 42 U.S.C. § 3604(f)(3)(B); *see also Budnick v. Town of Carefree*, 518 F.3d 1109, 1119 (9th Cir. 2008). The parties do not seriously dispute that the facts of this case satisfy these elements. Defendants instead assert two arguments in support of dismissal: (i) the Laus claim for prospective injunctive relief is moot; and

(ii) the Laus have failed to establish that they sustained any compensatory damages. Dkt. No. 68-1 at 2–3, 16–24; Dkt. No. 85 at 8–9.[27] The Court will address each argument *seriatim.*

I. **Claim for Prospective Injunctive Relief**

The Laus seek "an injunction, ordering [Defendants] to allow the [Laus] to park their van in the HPP guest parking . . . for as long as the [Laus]" need such an accommodation. Dkt. No. 1, ¶ 30. That claim for relief is now moot by virtue of the Board granting the Laus' permission to park in guest parking as of July 2019.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy" for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174 (2000). "If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Id.* at 189

---

[27]Defendants also assert for the first time in their reply brief that the individual defendants are entitled to summary judgment because the Laus "have produced no evidence to support claims against any of the individual Defendants." Dkt. No. 85 at 9. The Court, however, will not address this argument on the merits because LR 7.2 is clear: "Any argument raised for the first time in the reply shall be disregarded." If Defendants so choose, they may renew this request *in limine* and/or at the conclusion of Plaintiffs' case-in-chief.

(citations and internal quotation marks omitted). There is an exception, albeit a "stringent" one. *Id.*

For a case to be found moot because of a defendant's voluntary compliance, the *defendant* must establish that: "(1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, *and* (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Buono v. Norton*, 371 F.3d 543, 545–46 (9th Cir. 2004) (brackets omitted) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998); *see Friends of Earth*, 528 U.S. at 189–90. The party asserting mootness bears a "heavy" and "formidable" burden. *Friends of Earth*, 528 U.S. at 189–90; *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007).

Here, there is no dispute that Defendants provided Garrick with the exact parking accommodation that was requested.[28] Defendants therefore contend they have satisfied their burden because: (a) they granted Garrick the use of the HPP guest parking through a "proactive vote" of the HPP AOAO Board and issued "written confirmation" through counsel; and (b) "there is no reason to believe that [Defendants] would spend considerable time, money, energy and effort establishing a parking accommodation . . . only to change it back once this litigation is over." Dkt. No. 68-1 at 17–18. The Laus, on the other hand, maintain that this parking

---

[28]*See, e.g.,* Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 20–27; *see also supra* at 6, n.25.

dispute will likely recur—based on the fact that (1) Defendants granted the Laus permission to park in guest parking, later revoked that permission, and then again granted the Laus permission after a lawsuit was filed and the parties had litigated the issue; and (2) the AOAO Board allegedly granted the parking accommodation in violation of HPP's governing document, the Declaration of Condominium Property Regime of HPP—and therefore the Laus assert that "the Court should enjoin Defendants from *again* revoking the accommodation." Dkt. No. 75 at 5–6 (emphasis in original).

The Court concludes that the letter sent by the HPP AOAO—granting Garrick the non-exclusive right to park in HPP guest parking—represents a permanent change in Garrick's parking arrangements at HPP, as opposed to a temporary policy that HPP will refute once this litigation has concluded. Dkt. No. 69-3. The letter is unequivocal in tone and the stated parking accommodation is not conditioned on the outcome of this litigation. The letter provides the precise accommodation that the Laus requested (which the Laus admit constitutes "a reasonable parking accommodation"), is in writing, in contrast to the pre-suit permission that the Laus claimed to have, and it is clear from the letter that this case was the catalyst for the Board voluntarily approving the accommodation. *See also* Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 7–13, 20–21, 26. To be sure, the predictive power of HPP's past conduct is eclipsed by the fact that, insofar as the record shows, HPP never formally approved

- 11 -

the Laus to park their van in guest parking before it was towed and before the Board considered the Laus' August 2017 request for an accommodation. Prior to these events, HPP only tacitly permitted the Laus to park in guest parking. By contrast, the accommodation the Laus now enjoy is formally stated and has the approval of the HPP AOAO behind it.[29]

Because Defendants have met their heavy burden of proving that the challenged conduct cannot reasonably be expected to recur, the Court concludes that the Laus' claim for prospective injunctive relief is moot.

## II. The Laus' Claim for Monetary Damages

"Irrespective of the issue of injunctive relief, [the Laus] continue to seek damages to redress alleged violations of the Fair Housing Act." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982); *cf.* 42 U.S.C. § 3613(c)(1). Therefore, despite Defendants granting the Laus' accommodation request, the Laus claim for damages is not rendered moot. *Havens*, 455 U.S. at 371. Indeed, Defendants acknowledge that much. Dkt. No. 68-1 at 19–20.[30] Defendants instead contend that the Laus have no proof of damages. That is, Defendants argue the Laus cannot show that they sustained either: (1) vehicle towing costs; (2) damage to their vehicle as a

---

[29] Beyond the HPP Board standing behind the accommodation decision, Plaintiffs have this Court to do the same.

[30] *See also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (reiterating that Article III standing must be evaluated separately "for each claim [a plaintiff] seeks to press and for each form of relief that is sought." (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).

result of driving up HPP's parking ramps; or (3) emotional distress. Dkt. No. 68-1 at 19–22. The Court agrees, except that the Laus' evidence as to emotional distress is sufficient to support a jury's award of emotional distress damages and that sole claim for relief may proceed.

### 1. Vehicle Towing Costs

Defendants assert that the costs to tow the Laus vehicle in July 2017 are not attributable to Defendants. Dkt. No. 68-1 at 20–21. The Laus do not offer any argument in response. That alone is grounds for the Court to "consider the fact undisputed" and "grant summary judgment" to Defendants. *See* Fed.R.Civ.P. 56(c)(1), (3), & (e)(2)–(3).

Notwithstanding the Laus' failure to respond to Defendants' argument, there is no causal connection between the alleged towing costs and the Board's decision to deny the Laus' request for a parking accommodation. A "damages action under the FHA sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach." *Garcia v. Brockway*, 526 F.3d 456, 464 (9th Cir. 2008) (*en banc*) (brackets omitted; quoting *Curtis v. Loether*, 415 U.S. 189, 195 (1974)); *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 819–21, 824–25 (9th Cir. 2001) (applying general tort principles to the calculation of damages under the FHA). As such, "general tort principles of causation usually

govern," unless "there is a statutory command to the contrary." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1167 (9th Cir. 2013).

Here, the timeline of events establishes that the alleged costs associated with the Laus' vehicle being towed could not have been caused by Defendants' decision to deny the Laus' request for a parking accommodation. The Laus vehicle was towed on July 10, 2017. Dkt. No. 74-3 at 2. The only request for a parking accommodation made by the Laus to the Board—and for which there is supporting evidence in the record—was made later, in August 2017. Dkt. No. 74-2 at 1; Dkt. No. 74-3 at 2.[31] The Laus' FHAA claim is premised on Defendants' decision on August 23, 2017, to deny the Laus' request for a parking accommodation. Dkt. No. 74-3 at 3; Dkt. No. 69, ¶ 10; Dkt. No. 77-1, ¶ 12. Because the Laus' vehicle was towed *before* the Laus had even requested an accommodation, and *before* Defendants "refus[ed] to make reasonable accommodations in [its] rules," 42 U.S.C. § 3604(f)(3)(B), the Laus' vehicle was not towed as a result of a violation of the FHAA.[32] No reasonable jury

---

[31] At the hearing, counsel for the Laus represented to the Court that the Laus made repeated oral requests to park in guest parking prior to July 2017, and these requests were made to HPP security personnel. Counsel further stated that this is supported by Wilson's declaration, Dkt. No. 77-1. But these statements are wholly unsupported by precedent or the record. First, Wilson's declaration only mentions one request for an accommodation—Wilson's letter to the Board, dated August 1, 2017. *See* Dkt. No. 77-1, ¶ 6; *cf.* Dkt. No. 74-2. Wilson's declaration does not state that the Laus repeatedly asked HPP security personnel for a parking accommodation prior to July 2017. Second, nothing suggests that HPP security has the authority to grant such an accommodation and the Laus have not directed the Court to any authority to support the proposition that liability under the FHAA can be premised on a request for an accommodation that was made to individuals without the authority to grant the same.

[32] The Laus further admitted in response to interrogatories that they were familiar with the HPP

- 14 -

could conclude otherwise. Therefore, the Laus cannot recover under the FHAA for any damages related to their vehicle being towed.

### 2. Property Damage to the Laus' Vehicle

The Laus initially asserted in their Complaint that they "damaged the van's undercarriage" when they were forced to drive up the ramps in HPP's parking structure in order to get to their assigned parking spaces. Dkt. No. 1, ¶ 18. Defendants, however, contend there is no evidence that the Laus vehicle sustained any such damage, and that the Laus, in fact, concede that their vehicle was not damaged. Dkt. No. 68-1 at 21–22. Again, the Laus offer no argument in response and fail to cite to any evidence in the record indicating that their vehicle was damaged. Moreover, the Court specifically asked the Laus' counsel at the hearing, "is there any other form of compensatory damages, aside from towing charges and emotional distress damages, that the plaintiffs seek through this case?"; to which counsel responded, "No."

"[I]t is not [the court's] task . . . to scour the record in search of a genuine issue of triable fact." *Californians for Renewable Energy v. Cal. PUC*, 922 F.3d 929, 936 (9th Cir. 2019) (citations and internal quotation marks omitted); *see*

---

House Rules, these rules applied to them, and that pursuant to these rules "[v]iolators of any [HPP] parking regulations risk having their vehicles towed away at their own expense." Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 46–47, 50.

Fed.R.Civ.P. 56(c)(1), (3). Because the Laus have failed to adduce evidence of damage to their vehicle, the Laus cannot recover such damages.

### 3. Emotional Distress

The Laus also seek damages for emotional distress, but they admit that, as a result of the alleged conduct: (a) they have not received any mental or psychological treatment; (b) they have not received a mental or psychological diagnosis; (c) they have not paid for any such treatment; and (d) they do not possess any documents that state otherwise. *See* Dkt. Nos. 69-4, 69-5, 69-6 at ¶¶ 67–74. The Laus, however, point to their own testimony of emotional distress. *See* Dkt. No. 75 at 6 (citing Dkt. No. 12-1, ¶¶ 17–18; Dkt. No. 12-6, ¶¶ 17–19; Dkt. No. 12-7, ¶¶ 17–21).[33] Relying on extra-jurisdictional caselaw, Defendants contend the Laus' evidence is not enough to present to a jury. Dkt. No. 68-1 at 22–23.

The Laus' evidence is sufficient to support a damages award for emotional distress in this Circuit:

> While objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in . . . the Ninth Circuit, or the Supreme Court. *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional damages based solely on

---

[33]In particular, Wilson testified that he has a medical condition that is exacerbated when he is emotionally upset, and as a result of Defendants' conduct, he was "beyond upset" and "anxious"; he could not sleep; and "for about a week [he] couldn't listen" to his wife. Dkt. No. 12-1, ¶¶ 17–18. Mabel testified that her husband's blood pressure was elevated, and due to his medical condition, she was worried he might die. Dkt. No. 12-6, ¶ 17. Mabel herself was unable to sleep or eat normally for days and she became depressed. *Id.* at ¶¶ 18–19. Similarly, Garrick testified that he "felt oppressed" and was "furious"; "depressed"; and "deeply disturbed." Dkt. No. 12-7, ¶¶ 17–21.

> testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional damages may be awarded based on testimony alone or appropriate inference from circumstances); *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978) (noting that emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others).

*Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (ellipsis in original) (quoting *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000)). Hence, "[t]he testimony of the plaintiff alone can substantiate a jury's award of emotional distress damages." *Harper v. City of L.A.*, 533 F.3d 1010, 1029 (9th Cir. 2008). Defendants' objections to the quality of the Laus' evidence and Defendants' arguments that the Laus' testimony is "self-serving" are well taken, Dkt. No. 69-1 at 24; Dkt. No. 85 at 5–7, but the issues raised are more appropriately addressed on cross-examination at trial. "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255.

Because the Laus' testimony is enough to support an award for emotional distress damages under the law of this Circuit, a genuine dispute of material fact exists as to whether the Laus suffered emotional distress as a result of Defendants denying them a guest parking accommodation. Accordingly, with respect to the issue of emotional distress damages, Defendants' motion is DENIED.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment, Dkt. No. 68, is GRANTED IN PART AND DENIED IN PART.  **A jury trial on the issue of emotional distress damages shall commence at 9:00 AM on Monday, January 13, 2020, in Aha Kupono.**

IT IS SO ORDERED.

DATED: December 3, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Garrick Lau, et al vs. Honolulu Park Place et al*; Civil No. 18-00295 DKW-RT
**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**